**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

────────────────────────────────────────

**FRED COON; KAREN STRECKER;**
**SCOTT MATHER; CONNIE MATHER;**
**KENNETH KEPPEL; KAREN KEPPEL;**
**DALE MANGAN; and FRED COON** *on*
*behalf of his deceased wife, Pearl Coon,*

                    **Plaintiffs,**

          **v.**                                    **5:02-CV-1195**
                                                     **5:04-cv-917**
                                                       **(FJS/GJD)**

**WILLET DAIRY, LP; WILLET DAIRY,**
**LLC; WILLET DAIRY, INC.; DENNIS**
**ELDRED; and SCOTT ELDRED,**

                    **Defendants.**

────────────────────────────────────────
────────────────────────────────────────

**CONNIE MATHER and SCOTT MATHER**
*as Parents and Natural Guardians of S.M.,*
*a Minor Child,*

                    **Plaintiffs,**

          **v.**                                    **5:04-CV-917**
                                                       **(FJS/GJD)**

**WILLET DAIRY, LLC; WILLET DAIRY,**
**INC.; DENNIS ELDRED; and SCOTT**
**ELDRED,**

                    **Defendants.**

────────────────────────────────────────

**APPEARANCES**                          **OF COUNSEL**

**OFFICE OF GARY A. ABRAHAM**            **GARY A. ABRAHAM, ESQ.**
170 North Second Street
Allegany, New York 14706

Attorneys for all Plaintiffs

**KNAUF SHAW LLP**                    **ALAN J. KNAUF, ESQ.**
1125 Crossroads Building
2 State Street
Rochester, New York 14614
Attorneys for Plaintiffs in 5:02-CV-1195

**NIXON PEABODY LLP**                **DAVID L. COOK, ESQ.**
Clinton Square, Suite 1300
P.O. Box 31051
Rochester, New York 14603-1051
Attorneys for Defendants

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

This consolidated action involves two nearly identical complaints. *See Coon v. Willet*

*Dairy, LP*, 5:02-CV-1195 at Dkt. No. 1; *Mather v. Willet Dairy, LLC*, 5:04-CV-917 at Dkt. No.

1. In these pleadings, Plaintiffs collectively assert seven causes of action arising from

Defendants' operation of a large agricultural business for (1) Clean Water Act ("CWA")

violations; (2) Resource Conservation and Recovery Act ("RCRA") violations; (3) a declaratory

judgment that Defendants have violated CWA, the Rivers and Harbors Act of 1899, and New

York Environmental Conservation Law; (4) negligence; (5) trespass; (6) public nuisance; and (7)

private nuisance.[1]  Currently before the Court are Defendants' motion for summary judgment,

Plaintiffs' cross-motion for partial summary judgment, and Defendants' motion to preclude

---

[1] The Court will refer to Plaintiffs in both actions collectively as "Plaintiffs" unless it is
necessary to distinguish between the two sets of Plaintiffs, in which case, the Court will refer to
Plaintiffs in 5:02-CV-1195 as the "Coon Plaintiffs" and Plaintiffs in 5:04-CV-917 as the "Mather
Plaintiffs."  Likewise, the Court will refer to Defendants in both actions collectively as
"Defendants."

Plaintiffs' experts.

## II. BACKGROUND

Willet Dairy is located in southern Cayuga and northern Tompkins counties, near the town of East Genoa, New York. The farm grew significantly starting in the late 1970s and today consists of four properties, more than 8,000 cows, and approximately 6,300 acres of cropland. Due to its size, Willet Dairy is considered a large Concentrated Animal Feeding Operation ("CAFO") for regulatory purposes. In operating its dairy and crop farming operations, Willet Dairy produces manure at each of its properties. Pursuant to an Agricultural Waste Management Plan, Willet Dairy stores the manure and applies it to its fields.

Plaintiffs live near Willet Dairy and complain of several injuries allegedly caused by Willet Dairy's operation. Specifically, Plaintiffs claim that Willet Dairy filled, dammed or diverted streams and discharged waste into the ground and water causing flooding of Plaintiffs' properties, contamination of their wells, and air pollution. Moreover, Plaintiffs contend that they have suffered personal injuries and emotional distress, lost the use and enjoyment of streams and land, and lost the ability to conduct child-care and rental-property businesses.

## III. DISCUSSION

### A.      Notice and Delay Requirements

Defendants assert that the Mather Plaintiffs failed to comply with the notice and delay requirements in both CWA and RCRA. Therefore, Defendants request that the Court dismiss these claims.

CWA requires a citizen-plaintiff to provide an alleged violator sixty-days notice before filing suit.  *See* 33 U.S.C. § 1365(b).  However, a citizen-plaintiff can commence an action concerning a violation of CWA §§ 1316 and 1317(a) immediately after notification.  *See id.* When a citizen-plaintiff fails to meet the notice and delay requirements, "the district court must dismiss the action as barred by the terms of the statute."  *Hallstrom v. Tillamook County*, 493 U.S. 20, 33 (1989) (involving failure to follow a similar provision in RCRA); *see Prisco v. New York*, 902 F. Supp. 374, 398 (S.D.N.Y. 1995) (applying *Hallstrom* to both CWA and RCRA claims).

RCRA also requires a citizen-plaintiff to provide an alleged violator sixty-days notice before filing suit, with the exception that a citizen-plaintiff can commence an action concerning a violation of subchapter III of RCRA, relating to hazardous waste, immediately after notification. *See* 42 U.S.C. § 6972(c).  Additionally, in a "hybrid complaint," which alleges CWA claims along with closely-related RCRA subchapter III claims, the plaintiff can proceed immediately without delay.  *See Dague v. City of Burlington*, 935 F.2d 1343, 1353-54 (2d Cir. 1991), *rev'd on other grounds*, 505 U.S. 557 (1992).  However, if the plaintiff alleges only frivolous RCRA subchapter III claims, the district court can dismiss those claims and require observance of the notice and delay requirements by stay or dismissal.

The Mather Plaintiffs' Notice is dated July 15, 2004, and they filed their Complaint on August 2, 2004.  Therefore, the Mather Plaintiffs did not delay sixty days.  However, since they filed a "hybrid complaint," asserting CWA claims along with RCRA subchapter III claims, they were not required to delay their court action.  *See id.*  Accordingly, the Court denies Defendants' request to dismiss the Mather Plaintiffs' CWA and RCRA claims on this ground.

-4-

B.      **Clean Water Act**

      *1.  The Consent Order between Defendants and the New York Department of Environmental Conservation*

Plaintiffs allege that Defendants contribute to polluted runoff and discharge pollutants continuously or intermittently in violation of the Clean Water Act.  Furthermore, Plaintiffs cite three instances of discharge on December 10, 1999, March 6, 2000, and March 8, 2001.

It is well-established that a federal district court does not have jurisdiction over citizen suits under CWA concerning wholly past violations; rather, citizen-plaintiffs must make a good-faith allegation of continuous or intermittent violations to establish the court's jurisdiction.  *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 64 (1987).  Thus, when a state regulatory body charged with implementing CWA and a violator enter into a consent order, the court should dismiss a citizen suit against the violator regarding the same subject-matter as long as the settlement reasonably assures that the violations have ceased and will not recur.  *See id.* at 60-61; *Atl. States Legal Found., Inc. v. Eastman Kodak Co.*, 933 F.2d 124, 127 (2d Cir. 1991) (citation omitted).

In this case, the parties agree that Willet Dairy and the New York Department of Environmental Conservation ("DEC") entered into a Consent Order regarding the March 2001 manure spill, in which Willet Dairy paid a fine and agreed to implement certain improvements.  Moreover, Plaintiffs present no evidence that this violation is ongoing or likely to recur.  Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on Plaintiffs'

claims related to the March 2001 incident.

### 2.  *Filling and Diversion of Streams and Wetlands*

Plaintiffs claim that Defendants violated § 404 of the Clean Water Act, 33 U.S.C. § 1344, by filling streams and wetlands.  Specifically, Plaintiffs allege that Defendants bulldozed Schaeffer Brook in September of 1999 to create a farm pond.  In response, Defendants concede that they diverted Schaeffer Brook a short distance for the construction of a farm pond on their property and returned the brook to its natural course before it left the farm.  However, they assert that construction of a farm pond is exempt from CWA's permit requirement pursuant to 33 U.S.C. § 1344(f)(1)(C).  Moreover, Defendants state that the Army Corps of Engineers, which enforces the permit requirement, determined that the pond was exempt and issued a "Determination of No Jurisdiction" letter to that effect.

CWA requires that a party obtain a permit from the Secretary of the Army, through the Army Corps of Engineers, prior to discharging dredged or fill material into navigable waters.  *See* 33 U.S.C. § 1344(a); 33 C.F.R. § 323.1.  However, no permit is required "for the purpose of construction or maintenance of farm or stock ponds . . . ."  33 U.S.C. § 1344(f)(1)(C); 33 C.F.R. § 323.4(a)(3).  Although there is an exception to the exception requiring permits for the discharge of dredged or fill material into navigable waters for the purpose of bringing an area "into a use to which it was not previously subject," 33 U.S.C. § 1344(f)(2), permits are still not required for the construction of new farm ponds on existing farming operations.  *See Conant v. United States*, 786 F.2d 1008, 1010 (11th Cir. 1986) ("The plain purpose of the statute and regulations is to allow people to build ponds in connection with a previously established farming operation."); *In*

-6-

*re Carsten*, 211 B.R. 719, 736 (Bnkr. D. Mont. 1997) ("Consequently, as applied to such construction the 'new use' provision of § 1344(f)(2) cannot mean . . . that if a farm pond did not in the past exist, then the construction of such constitute a new use sufficient to invoke the recapture provision.  Again, such an interpretation would impermissibly render the pond construction exemption a mere superfluity." (citation omitted)).

In this case, Defendants had an existing dairy and crop farming operation encompassing the area used to create the farm pond.  Therefore, Defendants did not need a permit to discharge fill material in constructing the pond pursuant to 33 U.S.C. § 1344(f)(1)(C).  Moreover, the recapture provision of § 1344(f)(2) does not apply because the farm cannot fairly be considered a "new use."  Therefore, the Court **GRANTS** Defendants' motion for summary judgment on Plaintiffs' CWA claims regarding the filling and diversion of streams and wetlands.

### 3. *CWA's Permit Shield*

Defendants contend that the "permit shield" of 33 U.S.C. § 1342(k) precludes the balance of Plaintiff's CWA claims.  Therefore, Defendants argue that Plaintiffs cannot question the adequacy of their permit, including the permit's schedule of compliance.  Although the original CAFO permit required compliance by July 24, 2004, the revised permit extended the deadline for compliance until December 31, 2006.  In essence, Defendants contend that they could not have violated the permit prior to the December 31, 2006 compliance deadline.  Therefore, Defendants claim that the EPA and DEC had sole authority to monitor their CWA compliance prior to that date in accordance with the revised permit's enforcement provision.  Finally, to the extent that Plaintiffs challenge the revised schedule of compliance, Defendants assert that Plaintiffs are

attempting to challenge the adequacy of the permit's terms in contravention of the permit shield.

In response, Plaintiffs do not dispute that the revised permit covers Defendants' CAFO. However, they dispute (1) that the revised permit actually extended the time for Defendants' compliance and (2) that DEC could legally extend the time for Defendants' compliance due to CWA's anti-backsliding provision.

The original State Pollutant Discharge Elimination System ("SPDES") general permit ("GP-99-01") covered Defendants and required compliance by July 24, 2004. However, on February 12, 2003, the EPA issued its Final Rule concerning CAFOs' CWA obligations. Therefore, DEC renewed and revised the SPDES general permit with GP-04-02, which became effective on July 1, 2004, before the original permit's deadline.[2]  Moreover, the revised permit contained an extended compliance date of December 31, 2006, for existing large CAFOs. *See* GP-04-02 at VII(C)(I). The DEC specifically confirmed the extension of time for Defendants' CWA compliance, resulting from the EPA's revised guidelines, in the letter of Mr. John Dimura, Director of the DEC's Bureau of Water Compliance. *See* Affidavit of David L. Cook ("Cook

---

[2] Individual farms gain compliance with permit limitations by adopting an approved Comprehensive Nutrient Management Plan ("CNMP") in consultation with a certified Agricultural Environmental Management Planner. According to federal regulations,

> [a] CNMP addresses natural resource concerns dealing with soil
> erosion, manure, and organic by-products and their potential
> impacts on all natural resources including water and air quality,
> which may derive from an AFO. A CNMP is developed to assist an
> AFO owner/operator in meeting all applicable local, Tribal, State,
> and Federal water quality goals or regulations.

*See* 7 C.F.R. § 1466.3 (2007). Therefore, a farm's CNMP is the means by which it gains compliance with the applicable permit. In this case, Defendants implemented an Agricultural Waste Management Plan ("AWMP"), which Plaintiffs concede is equivalent to a CNMP.

Aff.") sworn to Feb. 15, 2006, at Exhibit "A."

Plaintiffs' assertion that the revised permit did not actually extend the time for

Defendants' compliance is contrary to the express terms of the revised permit: "[f]or existing

Large CAFOs . . . the completion schedule shall have all practices fully operational by December

31, 2006."  *See* GP-04-02 at VII(C)(i).  Additionally, as noted above, DEC Bureau of Water

Compliance Director John Dimura sent a letter, dated Feb. 15, 2006, to the EPA confirming the

delayed compliance schedule:

> Willet Dairy submitted their Notice of Intent (NOI) and was
> granted coverage under DEC's State Pollutant Discharge
> Elimination System General Permit GP-99-01 (CAFO General
> Permit) on July 24, 1999. . . . Under GP-99-01, the compliance
> date for full implementation of the CNMP was initially July 24,
> 2004.  With the issuance of the revised CAFO General Permit, GP-
> 04-[0]2, on July 1, 2004, the implementation date for all large
> CAFOs was extended to December 31, 2006 to be consistent with
> EPA's revised NPDES regulations.

*See* Cook Aff. at Ex. "A."  Accordingly, the Court finds that the revised permit extended

Defendants' compliance deadline to December 31, 2006.

The permit shield of 33 U.S.C. § 1342(k) protects a CWA permit-holder from facing suits

challenging the adequacy of its permit.  *See Atl. States Legal Found., Inc. v. Eastman Kodak Co.*,

12 F.3d 353, 357 (2d Cir. 1993) (quotation omitted).  Therefore, compliance with a NPDES or

SPDES permit constitutes compliance with the CWA.  *See id.*  Although the permit shield is

broad, a plaintiff can bring suit for violation of CWA's effluent standards or limitations – in

other words for violation of permit terms.  *See Swartz v. Beach*, 229 F. Supp. 2d 1239, 1268-69

(D. Wyo. 2002); *cf. Atl. States*, 12 F.3d at 357 ("'The purpose of [Section 402(k)] seems to be . .

. to relieve [permit holders] of having to litigate in an enforcement action the question whether

their permits are sufficiently strict.'" (quotation omitted)).

The Court finds that citizen-plaintiffs had no regulatory authority prior to the December 31, 2006 deadline for full compliance.  The permit expressly provides for the contingency that Defendants would create a CWA problem prior to the compliance date by allowing DEC to investigate and take direct enforcement action during that period, including modification or revocation of permit coverage.  *See* GP-04-02 at X(K).  Moreover, the permit expressly provides for the contingency that Defendants would otherwise violate state water quality standards by vesting DEC with authority to modify the CNMP or require other abatement action.  *See id.* at X(N).  Finally, to the extent that they allege that Defendants violated permit provisions by not reaching the level of full compliance prior to December 31, 2006, Plaintiffs are not alleging that Defendants violated the terms of the permit.  Rather, Plaintiffs are really arguing that the permit should have required compliance at an earlier date – an impermissible challenge to the adequacy of the permit under *Atl. States*.[3]  Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on Plaintiffs' CWA claims.

C.      **Resource Conservation and Recovery Act**

Both the Coon and Mather Plaintiffs claim that Defendants are "operators of the Farm and/or generators of solid waste, including manure and other wastes" and that their handling of

---

[3] As noted above, Plaintiffs also assert that DEC impermissibly revised the compliance date.  Specifically, Plaintiffs state that CWA's anti-backsliding provision, 33 U.S.C. § 1342(o), prohibits the renewal of a permit with effluent limitations less stringent than those contained in the previous permit.  However, this argument concerns the adequacy of the permit's terms and, therefore, cannot be asserted against Defendants due to the permit shield.  Furthermore, Plaintiffs' anti-backsliding argument would more properly be raised against DEC or EPA because it relates to the adequacy of the permit program rather than Defendants' actions.

-10-

solid waste has created "an imminent and substantial endangerment to health or the environment."  *See* Mather Complaint at ¶ 56; Coon Complaint at ¶ 37.  In addition, the Mather Plaintiffs assert that Defendants' farming activities have generated hazardous waste in the form of ammonia gas, hydrogen sulfide gas, and other air contaminants.  *See* Mather Complaint at ¶ 25.  Therefore, Plaintiffs assert that the Court should direct Defendants to "remediate [sic] the Pollution, abate this imminent and substantial endangerment, and pay plaintiffs' litigation costs, including their attorneys' fees and expert witness fees" pursuant to RCRA's citizen suit provision in 42 U.S.C. § 6972(a)(1)(B).  *See id.* at ¶ 57.  In response, Defendants assert that RCRA coverage is precluded because the farm is a point source that a duplicative CWA provision regulates, and RCRA contains non-duplication provisions.  Alternatively, Defendants assert that there is no solid waste at issue pursuant to 42 U.S.C. § 6903(27).

RCRA establishes a regulatory scheme for treatment, disposal, and storage of solid and hazardous wastes.  *See Conn. Coastal Fishermen's Ass'n v. Remington Arms Co., Inc.*, 989 F.2d 1305, 1313 (2d Cir. 1993).  However, RCRA has two non-duplication provisions.  First, § 6905(a) provides that

> [n]othing in this chapter shall be construed to apply to (or to authorize any State, interstate, or local authority to regulate) any activity or substance which is subject to the Federal Water Pollution Control Act[4] [33 U.S.C.A. § 1251 et seq.] . . . except to the extent that such application (or regulation) is not inconsistent with the requirements of such Act[].

42 U.S.C. § 6905(a).  Second, § 6905(b) directs the government administrator to "avoid duplication, to the maximum extent practicable," between RCRA regulation and government

---

[4] The Federal Water Pollution Control Act is popularly known as the Clean Water Act ("CWA").

regulation under CWA and other environmental acts.  42 U.S.C. § 6905(b).  Pursuant to the

second non-duplication provision, in a citizen-suit, when the EPA determines that a section of

RCRA is adequately covered by a duplicate provision of CWA, summary judgment is

appropriate on the RCRA claim to avoid duplication.  *See Jones v. E.R. Snell Contractor, Inc.*,

333 F. Supp. 2d 1344, 1350 (N.D. Ga. 2004) (involving RCRA's open dump provisions, 42

U.S.C. § 6945); *Long Island Soundkeeper Fund, Inc. v. N.Y. Athletic Club*, No. 94 Civ. 0436,

1996 U.S. Dist. LEXIS 3383, *32-*33 (S.D.N.Y. Mar. 22, 1996) (granting summary judgment

when the EPA had issued a regulation determining that CWA was adequate to remedy violations

of RCRA's open dump provision, 42 U.S.C. § 6945(a), but not reaching the plaintiff's claim to

abate an imminent and substantial endangerment pursuant to 42 U.S.C. § 6972(a)(1)(b) (citations

omitted)).

     The Court finds that allowing Plaintiffs' RCRA cause of action to proceed would violate

the first non-duplication provision in § 6905(a).  As noted above, the SPDES general permit

applied to Defendants, and CWA's permit shield insulates Defendants from suit as a CAFO and

point-source.  Moreover, Plaintiffs' asserted RCRA claim is based on the same activities and

substances that the CWA permit covered: namely, Defendants' handling of manure and other

agricultural waste.  Therefore, § 6905(a) directs that RCRA does not apply to these activities and

substances.  In other words, if the Court allowed Plaintiffs' RCRA claim to proceed, it would be

construing RCRA as inconsistent with CWA's permit shield.[5]  Accordingly, the Court **GRANTS**

---

     [5] Plaintiffs also claim that Defendants' spreading and spraying of liquid manure caused
air pollution.  To the extent that this claim would be cognizable under RCRA, the basis of
Plaintiffs' claim is still the application of manure, which Defendants' Agricultural Waste
Management Plan and, therefore, the SPDES permit covers.  Consequently, even the alleged air
(continued...)

-12-

Defendants' motion for summary judgment on Plaintiffs' RCRA claims.

**D.      Rivers and Harbors Act**

Plaintiffs allege that Defendants bulldozed Schaeffer Brook on September 17, 1999, in violation of § 9 of the Rivers and Harbors Act of 1899, 33 U.S.C. § 401, which prohibits the construction of dams or dikes on any navigable water of the United States without the approval of the Army Chief of Engineers and Secretary of the Army and the consent of Congress. *See* 33 U.S.C. § 401.

The Second Circuit has held that § 9 of the Rivers and Harbors Act does not confer a private right of action. *See Sierra Club v. Army Corps of Eng'rs*, 701 F.2d 1011, 1033 (2d Cir. 1983). Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on Plaintiffs' claims under the Rivers and Harbors Act.[6]

**E.      State-law claims**

**_1. New York Environmental Conservation Law_**

Plaintiffs claim that Defendants' pollution of well and ground water violates New York

---

[5](...continued)
pollution results from the same activity or substance that CWA regulates.

[6] Defendants also assert that Plaintiffs violated Rule 11 because "Plaintiffs' RHA claims (as well as those pursuant to ECL) are wholly meritless and Plaintiffs should have concluded so after reasonable inquiry." *See* Defendants' Memorandum of Law at 31 n.27. However, since Defendants have not filed a separate motion for Rule 11 sanctions, the Court need not address this issue.

E.C.L. Article 17 and that Defendants' filling of streams and wetlands violates New York E.C.L. Article 15.  In response, Defendants contend that there is no private right of action under the ECL.

E.C.L. Article 71 governs the statute's enforcement and reserves enforcement rights to DEC and the New York State Attorney General.  *See* N.Y. E.C.L. § 71-1127(2) (McKinney 1997) ("The penalties provided by . . . [Article 15] shall be recoverable in an action instituted . . . by the Attorney General . . . ."); N.Y. E.C.L. § 71-1929(3) (McKinney 1997) ("The penalties provided by . . .[Article 17] shall be recoverable in an action brought by the Attorney General . . . .").  Therefore, courts have held that the ECL does not confer a private cause of action.  *See Johnson v. Monsanto Chem. Co.*, 129 F. Supp. 2d 189, 195 n.1 (N.D.N.Y. 2001) ("Plaintiffs point to no private cause of action such as the one brought in this case.  Accordingly, their claim, to the extent it alleges a violation of the ECL, is dismissed."); *Nowak v. Madura*, 304 A.D.2d 733, 733 (2d Dep't 2003) (dismissing cause of action under a provision of Article 15 because "[t]hat statute does not confer a private cause of action" (citations omitted)).

Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on Plaintiffs' claims under Articles 15 and 17 of the New York E.C.L. because no private cause of action exists to enforce these provisions.

### 2.  *Remaining State-law claims*

As noted above, Plaintiffs also assert state-law claims for negligence, trespass, and public and private nuisance.  Defendants contend that the Court should decline to exercise supplemental jurisdiction over these claims because there is no legal basis for Plaintiffs' federal claims.

In general, when all federal claims are dismissed before trial, the court should decline to exercise supplemental jurisdiction over pendent state claims.  *See Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) (citations omitted).  Dismissal is favored because it allows "state courts . . . if so called upon, [to] decide for themselves whatever questions of state law this case may present." *Giordano v. City of N.Y.*, 274 F.3d 740, 754 (2d Cir. 2001) (citation omitted).  However, dismissal of pendent state claims on this basis is discretionary, and the court should base its decision on a consideration of judicial economy, convenience, fairness, and comity.  *See Marcus*, 138 F.3d at 57 (quotation omitted).  After considering these factors, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims and dismisses these claims without prejudice.[7]

### IV. CONCLUSION

Accordingly, having reviewed the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** with regard to Plaintiffs' Clean Water Act, Resource Conservation and Recovery Act, Rivers and Harbors Act, and N.Y. Environmental Conservation Law claims, as well as Plaintiffs' request for a declaratory judgment; and the Court further

**ORDERS** that Plaintiffs' remaining state-law claims for negligence, trespass, and public and private nuisance are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367;

---

[7] The Court notes that Plaintiffs may timely file a state-court action based upon these claims due to statutory tolling of the statute of limitations.  *See* 28 U.S.C. § 1367(d); N.Y. C.P.L.R. § 205(a) (McKinney 2003).

and the Court further

      **ORDERS** that Plaintiffs' cross-motion for partial summary judgment is **DENIED**; and

the Court further

      **ORDERS** that Defendants' motion to preclude Plaintiffs' experts is **DENIED AS**

**MOOT**; and the Court further

      **ORDERS** that the Clerk of the Court enter judgment and close this case.

**IT IS SO ORDERED.**

Dated: July 17, 2007
      Syracuse, New York

                                    Frederick J. Scullin, Jr.
                                      Senior United States District Court Judge